IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | CRIMINAL NO. 2007-002 |
| v.    ) | |
| ) | |
| BEATRICE LAWRENCE    ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

## MEMORANDUM OPINION

FINCH, J.

THIS MATTER comes before the Court on a Motion in Limine filed by the United States of America seeking to introduce the October 26, 2006 out of court statement made by an anonymous caller to law enforcement officials at Customs and Border Protection ("CBP") at the Henry E. Rohlsen Airport.

**BACKGROUND**

The Department of Homeland Security ("DHS"), CBP, at the Henry E. Rohlsen Airport on St. Croix received two anonymous phone calls informing officials that Defendant would be traveling with narcotics. On October 26, 2006, the anonymous caller stated that Defendant and a companion would be traveling in the near future to New York with drugs in their luggage and the caller provided specific details as to how the contraband would be placed in the Defendant's luggage after she cleared Customs and the Transportation Security Agency ("TSA") check point. This information was then passed on to a Special Agent of DHS's Bureau of Immigration and Customs Enforcement ("ICE").

1

On November 9, 2006, CBP received a second anonymous call that Defendant would be traveling with drugs on that day.  After researching the reservations lists for air carriers at the airport and confirming that Defendant had a flight reservation for November 9, 2006, CPB officials contacted Special Agent Thomas.  Special Agent Thomas was notified of the second anonymous call and the reservation for Defendant to travel that day aboard American Airlines Flight 5133 from St. Croix to San Juan, Puerto Rico.  A joint operation between ICE, CBP and the Virgin Islands Police Department K-9 Unit was put in place for November 9, 2006 at the airport.

Defendant arrived at the airport with her bags and went through the TSA check point without any problems.  Defendant was kept under camera surveillance from the moment she entered the airport at the American Eagle ticket counter through their inspections by CBP and TSA.  All luggage for American Eagle Flight 5133 was allowed to be loaded onto the aircraft.  After Defendant boarded the aircraft, all passengers were asked to deplane and the bags were removed from the flight.  The Virgin Islands Police Department K-9 unit was brought in to go over the bags but the dogs did not alert on any luggage.  ICE Special Agents searched Defendant's luggage, finding three small cooler bags of cocaine.  Defendant was informed that drugs had been found in her luggage and was arrested.

**DISCUSSION**

The government argues that the statement by the anonymous caller is admissible as a non-hearsay statement; as background information and to provide context to show why officers acted as they did on November 9, 2006.  United States v. Sallins, 993 F.2d 344 (3d Cir. 1993) is

the seminal Third Circuit case discussing the admissibility of statements made by an anonymous caller and is particularly instructive.  The defendant in <u>Sallins</u> was arrested and charged with possession of a firearm by a convicted felon, and his apprehension was based in large part on an informer's tip.  Officers responded to a 911 call that a black man in black clothes was on a particular block carrying a gun.  <u>Id</u>. at 345.  When officers arrived in the area described in the radio report, they observed a black man in black clothing, Sallins, walking along the sidewalk.  Id.  Upon seeing police, Sallins appeared to throw something under a car and ran away.  <u>Id.</u>  Police gave chase, arrested Sallins, and searched under the cars near where Sallins had been walking and found a gun.  <u>Id</u>.

After a mistrial, the defendant was tried again and the government introduced testimony concerning the substance of the tip given by the confidential informant.  The government claimed that "the contents of the radio call were introduced only as background to explain why the officers went to North Franklin Street and acted as they did," and were therefore not hearsay.  <u>Id.</u> at 345-46.  The Third Circuit disagreed, noting that while "officers generally should be allowed to explain the context in which they act, the use of out-of-court statements to show background has been identified as an area of 'widespread abuse.'" 993 F.2d at 346 (<u>citing</u> 2 McCormick on Evidence § 249, at 104 (4th ed. 1992)):

> In criminal cases, an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct.  His testimony that he acted "upon information received," or words to that effect, should be sufficient.  However, cases abound in which the officer is allowed to retain historical aspects of the case, replete with hearsay statements in the form of complaints and reports, on the ground that he was entitled to give the information upon which he acted.  The need for the evidence is slight, the likelihood of misuse great.

3

Id.; see also United States v. Lopez, 340 F.3d 169, 176-77 (3d Cir. 2003) (recommending the use of "general terms" to provide background for police activities).

The Sallins court assessed the government's alleged non-hearsay purposes and found them to be inadequate, since the police could have testified that they were responding to a radio call without divulging the substance of that call. The Third Circuit concluded that the statements should have been excluded as hearsay, and the conviction was reversed. In analyzing the 911 call at issue in Sallins, the Third Circuit found "the absence of a tenable non-hearsay purpose for offering the contents of the police radio call establishes that the evidence could have been offered only for its truth value." Id. at 347. It also found that "the government's closing argument to the jury dispelled any conceivable doubt as to the true evidentiary purpose of the disputed testimony." Id. Such uses of out-of-court statements to show background can give the government's case an unfair advantage and the district court should have permitted the police to explain their actions only by testifying that they acted "'upon information received,' or words to that effect." Id. at 346. "In order to avoid the potential for abuse, courts must independently assess whether an out-of-court statement is hearsay rather than simply relying on the government's assurances to the contrary." United States v. Cannon, 220 Fed. Appx. 104, 107 (3d Cir. 2007); see United States v. Mertens, 1994 U.S. Dist. LEXIS 1292 at * 12 (D.N.J. Feb. 2, 1994).

The Third Circuit has had the opportunity to review its decision in Sallins and consider the limits on offering out-of-court statements for background purposes in two key cases. In Lopez, 340 F.3d at 171, prison officials were permitted to testify that an anonymous tip led them to the drugs found in an inmate's cell. The Third Circuit found the testimony regarding the tip to be inadmissable hearsay because (1) the government invoked the tip in its closing, (2) there was

4

no direct evidence linking the inmate to the drugs and (3) it would have been easy for the government to establish the context of the search without reference to the tip. Id. at 176-77. The Third Circuit reversed the defendant's conviction and remanded for a new trial.

More recently, in United States v. Price, 458 F.3d 202 (3d Cir. 2006), the Third Circuit had another chance to review its decision in Sallins; this time in the context of an out-of-court statement, not made by an anonymous tipster, but by an eyewitness who testified at the trial, to show background information as to why police officers acted as they did. Price involved the testimony of three police officers performing drug surveillance. Id. at 204-05. The first testified that he observed a suspect take a gun from his pants and place it in the trunk of his car. The other two officers, both of whom were in radio contact with the first, but neither of whom could see the suspect, testified that they approached and ultimately searched the defendant because they had learned from the first officer that the defendant had taken a gun from his pants and placed it in his trunk. Id. at 205.

The defendant in Price insisted that Sallins was a complete bar to the hearsay testimony of the latter two officers. Id. However, the Third Circuit explained "Sallins did not hold that it could never be the case that a background explanation might, in order to serve its legitimate background evidentiary function, require inclusion of prejudicial details insofar as they constituted an integral part of the explanation for the officer's actions." Id. at 210. The Third Circuit found that Sallins and Lopez did not require the exclusion of the two officers' testimony because the "underlying concern in those cases was that the government was seeking to indirectly present testimony from an unseen eyewitness who did not himself appear." Id. at 209. In Price, the Sallins rule did not apply because both officers testified and there was no "unseen eyewitness." Id.; see Cannon, 220 Fed. Appx. at 108.

5

The legitimate non-hearsay evidentiary purpose asserted by the government for the introduction of the anonymous caller's statements in this case is to provide context so that the jury can make sense of the actions taken by law enforcement agents at the airport. The government insists that this evidence is being offered to explain why agents from ICE, who are not normally engaged in the practice of searching luggage at the Henry E. Rohlsen Airport, were there on November 6, 2006 to perform surveillance on Defendant. The government contends that the statements of the anonymous tipster are not being offered for the truth of the matters asserted but are offered to explain why the ICE agents decided to off-load luggage on an aircraft ready to depart the airport, to perform a search, when prior searches of the luggage had revealed no presence of contraband. The government argues that allowing the agents to testify to the details provided by the anonymous tipster would be the only way that the jury could make sense of the actions taken by law enforcement agents.

The government relies on Price in making their argument that "Police officers are permitted under Sallins to explain the background context for their arrival at a scene. When the explanation cannot be effected without relating some contents of the information received, Sallins does not prohibit admission of such details." Id. at 210. However, unlike the situation in Price, the government is seeking to indirectly present testimony from an anonymous tipster who will not appear. Id. at 209. "While neither Sallins nor Lopez rests explicitly on the anonymous nature of the initial source of the information," in these two cases decided by the Third Circuit involving an anonymous call, the callers' statements were found to be inadmissible hearsay. Id. Price did not involve an anonymous caller or an "unseen eyewitness" and there was no concern over the introduction of statements made by an individual who would not testify in court. Unlike in Sallins, the credibility of the eyewitness account was directly tested in Price when that

eyewitness testified at trial. Therefore, the Sallins rule did not apply as it does in the present case.

"The Sallins rule is that if an officer can answer that question by saying he acted 'upon information received,' any further revelation of the contents of the information received is impermissible hearsay. The Sallins test thus contemplates an inquiry into the nature of the proffered background explanation." Price, 458 F.3d at 210. The question is, does the anonymous caller's statements provide legitimate background context or does it in fact serve as illegitimate backdoor eyewitness testimony? In this case, the Court finds that the government can adequately explain the ICE agents' actions by stating simply, "We received information from an anonymous caller to which we responded."

Even though the search of Defendant was unusually extensive, divulging the detailed information that the caller provided to officers is not necessary to establish the legitimate evidentiary purpose asserted by the government. Because the government can establish the context of the search and clear up any jury confusion without reference to the anonymous caller's statements, the Court will deny the government's motion in limine seeking introduction of the out of court statements. Only if it is clear that defense counsel plans to attack the motivations of ICE agents may the government introduce background evidence that explains why the witnesses acted as they did. Countering a defense counsel's attack on the motivations of police witnesses is one of the "tenable non-hearsay purpose[s]" for which out-of-court statements may be admitted under Sallins. See Cannon, 220 Fed. Appx. at 108.

7

**CONCLUSION**

The Court finds that the anonymous caller's statements are hearsay under Rule 801 of the Federal Rules of Evidence. The Court further finds that the government can adequately explain the actions of law enforcement and provide context to the jury without reference to the anonymous caller's statements. Therefore, for the reasons stated above, the Motion In Limine is **DENIED** as to the government.

**ENTERED this 20 day of February, 2008.**

_____/s/_____
**HONORABLE RAYMOND L. FINCH**
**U.S. DISTRICT JUDGE**